Our second case is 24-4604 United States v. Allen. Now you may proceed, Ms. Nooks. Thank you, your honor. We are here asking you today to reverse the district court's decision suppressing the evidence. Here are the drugs and guns found in the defendant's bags at the time of his arrest would have been inevitably discovered during any one of three lawful inventory searches his property would have undergone prior to his being locked up in the Wake County Detention Center and the court clearly erred here in finding otherwise. Inevitable discovery requires the government to prove by a preponderance that police would have completed one lawful search which would have uncovered the evidence. Here the government presented uncontested evidence of three lawful searches or search opportunities, every one of which would have uncovered the drugs and guns. Are you aware of any case where this court has ever reversed a district court's holding that something wouldn't have been inevitably discovered? No, your honor, I am not. And that's because clear error is a really high standard of review? Yes, sir. From which the government routinely derives substantial benefit in criminal appeals? Yes, sir, your honor. It is odd for us to be on this side. Okay. Yes, but the evidence again uncontested before the court showed that both the Raleigh Police Department and the Wake County Detention Center would have conducted searches, particularly inventory searches, at the scene of the crime upon the defendant's arrival at the jail and again when he didn't bond out from the jail. And before we get into that, I'm sorry, to do the thing that I think you with some fairness accused the district court judge of doing, but to do it again, what in the literal heck were these thinking? Because there were multiple Fourth Circuit decisions that suggested you absolutely cannot do the thing that they did here. Like, why are we even having an inevitable discovery? Because Davis makes 100% clear this is not a valid search engine to address, and Buster makes 100% clear this is not a valid search. So how in the world did they think this didn't violate the Fourth Amendment? Your honor, I think that this is a sliding scale type of reasonableness inquiry, right? You have cases like Farrabee where the defendant was secured in handcuffs and outside a home when police searched a book bag inside the home, and this court found that he could have somehow reached the book bag. Of course, in Davis, which actually came from this district, the court found otherwise. When a defendant was on his stomach with his hands handcuffed behind his back, that was a situation where he couldn't have reasonably breached this evidence. Here we have a defendant... And Buster makes very clear this is not a valid tariff risk? Yes, your honor. This was an arrest. Absolutely. Again, I know this may be... My hypothesis, once we're doing inevitable discovery, we're assuming they violated the Fourth Amendment. But I don't really understand how they possibly could have thought they were allowed to do this. Well, your honor, they had just fought with this defendant for about five minutes. It took between three and six officers to get him subdued and secured on the sidewalk there. And then somewhere between 15 and 20 minutes after they actually got him in those cuffs, they conducted this search of these bags that were, to be clear, about two feet away from his face. Fifteen minutes after we've cuffed someone, we have to search their bag? Yes, sir, your honor. Okay. Yes. And certainly we are not contesting that the district court got the search incident to arrest analysis wrong. We've made a preservation argument because we believe that the Supreme Court could decide Davis situations differently, along with the First Circuit and Supreme Courts or courts of last resort in other states would have called this a good search incident to arrest. So just as reasonable legal minds can differ on this point, as our colleagues do in the First Circuit, for example, I think it's not completely unreasonable or crazy for the Raleigh Police Department officers to have considered this a search incident to arrest. At any rate, that was their primary justification for this search of the bags. Although they also indicated at the time of the search that they were also doing this as an inventory search. In the district court, the government offered evidence of the Raleigh Police Department's inventory policy, including their written inventory search policy and testimony of two officers who were trained in that policy. And that policy requires any personal property in the possession of an arrestee to be searched in inventory. It applies to all property in possession of every arrestee who is bound for the jail. There's no discretion here. All of that property is going to be searched. So based on Raleigh's inventory policy, law enforcement officers certainly could have conducted a lawful inventory search, which would have revealed the guns and drugs here. And the evidence showed that if Raleigh officers hadn't searched the bags incident to arrest, they would have searched them per the policy. We know that because they actually did. That was their secondary justification for the search of the bags at the scene. So in Alston, this court told us to look to two things when we are determining whether there's a valid, inevitable discovery search, whether the officers could have done a lawful search and whether they would have done a lawful search. And it's clear here that Raleigh could have, according to their policy, and that they would have because they actually did. Well, wait, hold on. The could have question isn't what their policy says. The could have question is would the Fourth Amendment have allowed it, right? Isn't that the, that's the could have question for an inevitable search? Yes, Your Honor. I agree with you. Yes. Certainly the policy comes into it because inventory searches require standardized criteria. Ms. Nopes, could I interrupt you? And you raise a good point about the fact that Raleigh, the Raleigh Police Department had its own policy because the district court seemed to be caught up with the notion that there wasn't evidence of a Wake County detention center policy, at least written evidence. I think the policy was described at the hearing, but even if he, even if that could somehow survive clear error, I don't see how that would matter if the Raleigh Police Department had its own policy to search following an arrest, which is exactly what happened here, right? Yes, Your Honor. Exactly. We believe that this evidence of Raleigh's search, Raleigh's policy and Raleigh's search is sufficient standing alone to show that this evidence would have been inevitably discovered. And I would also note that to the extent that the district court's order required the government or faulted the government for not introducing Wake County's written policy, that was error. This court has been very clear in cases like Clark and Bullitt that introducing a written policy is not and never has been required. Nonetheless, the government did introduce Raleigh's written policy. And again, that Raleigh search, that inevitable inventory search that Raleigh did at the scene was itself sufficient to show that this evidence would have been inevitably discovered. But the government, as we know, just didn't stop there. It also presented evidence that the Wake County Detention Center would have done its own searches, two separate searches, which also would have uncovered the evidence if the evidence had made it from the scene. We know it didn't go with the defendant to the jail because it had already been searched and inventoried and secured by the Raleigh Police Department, right? But the inevitable discovery doctrine deals in hypotheticals. So it's relevant to think about what would have happened if Raleigh hadn't done its search and hadn't secured the property. What would have happened at the jail? And to support the policy of Wake County Detention Center, the government offered testimony of a jail lieutenant. We did not offer the written jail policy, but this jail lieutenant who testified is somebody who has several years been in intake in the Wake County Detention Center and is enough of an expert in this particular policy that he's charged with training other Wake County Detention Center staff in how to do these types of searches and procedures when arrestees come into the jail. So that officer, that lieutenant, testified that when folks come into the jail, they're initially told to remove all of their outer clothing and remove the items from their pockets, and then their persons are subjected to a pat-down search. But their property is searched both by an arresting officer and by a Wake County Detention Center staff member. At that point, when defendant came into the jail, during that initial search, this evidence would have been inevitably discovered. There can be no argument that the Wake County Detention Center staff would have somehow missed two guns, for example, in the defendant's bags. So once again, we have another opportunity at which time this evidence would have been inevitably discovered. But the lieutenant also testified about a further search, or here in this case, a third search that would have occurred. When arrestees don't find out of the jail, there's another more fulsome inventory search done. And I would note for the court that we know that this defendant did not bond out of the jail on the day of his arrest. That's in docket entry 21, the pretrial services report. And the government apologizes that this was inadvertently left out of the joint appendix, but we did provide a copy of this to defense counsel ahead of argument here today. So we know that the defendant didn't bond out of jail, and the Wake County Detention Centers would have, as the lieutenant said, quote, gone through all of their property once again, and keyed in a list of items of their property into the system. So somebody at Wake County would have gone through every piece of that property, every pocket, every piece of that property, and taken a look at exactly what was in those bags, and then made a list of it in the Wake County system. And once again, of course they would have found the guns and drugs at that point if they hadn't somehow been discovered in the two inventory searches that would have occurred before that. So because of that, it's clear that the Wake County Detention Center staff could have lawfully done an inventory search which would have revealed the defendant's property, and we also know that they would have. Per that same jail lieutenant, there's no discretion in this particular policy. It's done for every single arrestee that comes into the facility for every offense, right? It's done so that they can maintain the safety and security of the jail, the other inmates, the staff, all of those things. So it's done in every single situation. And because the evidence clearly showed that the Wake County Detention Center would have conducted lawful inventory searches which would have discovered the evidence, again, the district clearly erred in finding otherwise. Can I ask a question related to Judge Hyten's earlier question? Is Davis and the cases that support it essentially a dead letter? For urban police departments that have inventory policies, essentially Davis doesn't mean anything anymore, right? So there doesn't appear to be any limiting principle if the police department has an inventory policy. The fact that the officers might have violated Fourth Amendment by conducting an all-awful search incident to arrest means that nothing happens because of an inventory policy. Your Honor, I would say a couple of things to that. First of all, anytime we're talking about inevitable discovery, we're always talking about some kind of police misconduct, some kind of bad search. And on the spectrum of egregiousness, this type of search incident to arrest, which the court found bad under Davis, is sort of the low end of the type of police misconduct that we might see, right? The inevitable discovery doctrine comes from the Nix case where the government would submit the police misconduct was extremely egregious. There, as this court is aware, the officers violated defendant's amendment right to counsel after promising the defendant's attorney that they wouldn't do that. So bringing it back, I would say that... Well, to rephrase the Chief's question in a slightly different way, what's a factual situation in which you'd ever actually suppress based on a Davis violation? Because it seems like in every single case, the government will just be able to make a winning inevitable discovery argument. Your Honor, the inventory doctrine requires two things, both standardized criteria and action in good faith. Let me rephrase. As long as the government doesn't just totally screw up and fail to have a written policy, the government will always be able to avoid a Davis problem. Well, it's not just when the government has a written policy. That policy has to, for example, cabin officers discretion as a Raleigh policy. Great. Well, cabin discretion by saying once you arrest people, search every single one of them. Right. And that is reasonable, according to the Supreme Court, because inventory searches are an administrative function, right? It's important for jails and for police permits to ensure that defendants don't have contraband or weapons when they're taken into custody. So the inventory search is not an evidence gathering function. It's just an administrative function. And yes, to both Chief Judge Diaz and Judge Hyten's points, it will uncover this evidence in many of these cases. But this court has already found that type of inevitable discovery based on an inventory search to be lawful. I'd point you, it's unpublished, but to that Willborn case where this court had no problem upholding an inventory search-based inevitable discovery of a defendant's book bag that was searched at the time of his arrest because those items would have been inevitably discovered. I see that I'm running out of time, but I also want to just note that the court committed legal error here, too, by adopting the defendant's argument below that the government had to explain why it did not get a warrant to search the defendant's property. As this court is aware in the context of inventory searches and inevitable discovery, that simply is not required. I see I've run out of time, so I'll cede to my colleague. Let me ask you just one other question. It seemed like the court also relied on the fact that the wake policy was not in writing. And I thought that our precedent suggests that it does not have to be in writing. It can be testified to by a competent witness. May I answer Judge Niemeyer's question? Yes, go ahead, please. Thank you. Judge Niemeyer, I completely agree with you to the extent that the district court's order, I think the district court's order is not completely clear on that point, but to the extent that it faulted the government for not submitting the Wake County's written policy, that was clear legal error because this court has been clear in several other cases that submitting a written policy is not and never has been required. Thank you very much. Mr. Shive, I hope I said that right. Yes, Chief Judge Diaz. Colin Shive on behalf of FLE Milton Allen. May it please the court. I'd like to start by addressing the three different searches that Ms. Noakes identifies and claims would have been lawful inventory searches. The first was the one that took place at the scene of the arrest. And picking back up on the questions from Chief Judge Diaz and Judge Heitens, we believe that this policy is impermissible under Diaz and the Fourth Amendment and the United States Supreme Court decision in Illinois v. Lafayette. As Chief Judge Diaz noted, this policy would render Diaz a dead letter and the Raleigh Police Department can't, through policy, turn an illegal search into a legal one. The whole notion of inevitable discovery— Well, it's also a little bit weird to say that a Fourth Circuit decision can gut a doctrine established by the Supreme Court. Like, I'm not aware of the—it's the obligation of a lower federal court to strain to make sure that our decisions concerning the Fourth Amendment aren't rendered a dead letter. And as a result, we can just make an exception to a Supreme Court doctrine. Well, Your Honor, I think that language from Illinois v. Lafayette provides direction to the court in that regard because there the Supreme Court noted that the factors justifying the search, an inventory search, at a jailhouse, when the defendant arrives at the jailhouse, are different than at the scene of the arrest. And the Supreme Court there then held that at the station house, it is entirely proper for police to remove and list their inventory property. So that's distinguishable from the case here, where the illegal search is a search incident to arrest, and the government is now just attempting to say that, OK, we— Right. That's the search they did here. But under inevitable discovery, we have to ask about the search that they could have done and whether that search would have been done. So, like, I mean, you know the fact pattern. The fact pattern is fine. They don't search the bag there, but they placed him under arrest. They're going to bring the bag to the detention facility because they're not just going to, like, leave it on the side of the road or hand it to some random person. They're not going to do those things. So they're going to bring it to the detention facility, and when it's at the detention facility, it's going to be searched because they don't let bags into the detention facility for reasons that seem so obvious as to not require comment. Correct, Your Honor. I think there are two things there to inevitability. One is that here in this case, the defendant did not go straight from the scene of the arrest to the detention center. He went to at least to one, if not two, different hospitals, and none of the officers who testified at the suppression hearing were able to testify about the chain of events that happened from the scene of the arrest until the defendant got to the detention center. Officer Easterling, for example, testified that he knows that the defendant went to one hospital, possibly two. He couldn't say. There was no testimony from the other officer about that, and the lieutenant at the detention center who testified said that he does not know where the defendant went from the scene of the arrest until he gets to the detention center, and the Supreme Court noted that important point again in Illinois v. Lafayette when they said, and I quote, an arrested person is not invariably taken to a police station or confined, and we submit that even here and even when they are, it's not invariably the case that arrestees' personal belongings will follow them there. For example, in United States v. Wilbourn, the unpublished Fourth Circuit case that Ms. Noakes cited and referenced in her argument, there was testimony from the officers that there was nobody else on site for them to hand the bags to. So there could have been someone on site for them to hand the bags to. I understand in the government's reply brief they have reviewed the body cam footage and saying that it doesn't appear there was anybody there, but there's no testimony to that. So this is now the argument that maybe his bags would have not ever reached the detention center. That's the argument we're making right now? I believe it is possible. Well, okay, now my follow-up question. Where, if anywhere, did you ever raise that argument to the district court? We did raise the argument. The government had met its burden with respect to inedible discoveries. Did you ever say the government has not shown that the bags would have actually been brought to the detention facility? Did you ever say that to the district court? No, Your Honor, we did not. But this court can... Let me ask you, is the record clear that when he was arrested and taken to the hospital, the bags were not taken to the hospital? We have no idea. Yeah. We have no idea where the bags were. Yeah. Yeah. And let me ask you, if the bags were still on his body when he was arrested, could the officers have searched the bag while they were on his body? Under United States v. Davis, yes, they could have because they would have been within his reach during that time if he was unrestrained and could have reached them. Correct. So the whole thesis here about police misconduct is because the bags were removed two feet away and he was under control, that the search they conducted there was not proper, but they could have conducted the search on his body incident to the arrest. And the reason for that, Your Honor, would be because of officer safety. Well, is that the only reason for a search? Isn't there also a reason for the preservation of evidence? And safety and collecting of evidence? If law enforcement had believed that there was evidence of a crime in that bag, then they could have held the bags and obtained a search warrant. No, it's on his body. They don't know. And you just told me they could search it if it's on his body. Correct, Your Honor. All right. So if they can search it while it's on his body, but they can't search it when they've removed it from his body and put it two feet away, this is what we're facing in this case. And I know this is not the direct issue before us because Davis is contrary to that. But I'm just thinking in this idea that here you have somebody, it took him five minutes to take down. He had these bags. They took them off him and laid him aside before searching him. Well, they could have searched him when they were on his body and they're going to arrest him. But before arrest him, they had to take care of his injuries. Presumably, we don't know this directly. They seized the evidence and held the evidence. And of course, once they seize the evidence, their possession, the two bags, at some point they're going to inventory it. They would inventory them if the bags would inevitably arrive at the detention center. And I do believe it's possible that something else could have happened to the bags in the meantime. A loved one could have taken them at the hospital. The defendant in this case was taken to the hospital because he had chest pains. It's certainly reasonable that a member of his family could have been alerted to that. And if he's at the hospital, he could have given his bags to them. And if not, I would ask why not? If this is not an impermissible ruse for searching, then why would the law enforcement not provide an arrestee an opportunity to hand the bags off to someone else? As to the two different searches that take place at the detention center, we believe that the testimony of the lieutenant about the initial pat-down phase of the search is ambiguous and unclear. The lieutenant says that once an arrestee arrives at the detention center, they're brought into this initial search area and a pat-down search is conducted. The government attorney at the suppression hearing then said, does that search, referring to the pat-down search, does that search apply to personal belongings? And he says that it does. But he doesn't say what that search involves. He does not say it's an inventory search. He does not say that bags are opened, all the items are removed, and, you know, analyzed to see if there's contraband or anything else. He just says that the pat-down search, however that would apply to personal belongings, occurs at that initial search in the search area. And then afterwards, after the defendant is held for a while and it's determined whether or not they're going to be released, if they're going to bond out or otherwise be released, then an inventory search takes place. And the government has the burden of showing that inevitably these bags would have been subject to an inventory search. And an inventory search was not described with respect to that first phase. The government makes the point today that the defendant didn't bond out. We submit that's entirely irrelevant because possibly the reason he didn't bond out is that he was charged with possession of, felon in possession of a firearm and major drug offenses because this illegal search had taken place. If that illegal search had not taken place, the charges that he would have been brought in for would have been far more minor. And it's certainly possible that he could have bonded out in that case. And we don't know if the bags would have been searched in. It's unclear. And reviewing the record in the light most favorable to Allen, the prevailing party below, we believe that the lieutenant's testimony is ambiguous in that regard. The district court did not commit clear error in finding that the government had not met its burden. So could you just articulate for me again what you think the district court meant when it said um, that's Chief Justice Berger's legacy, inevitable discovery, one of my favorite cliches of all time. Yeah, OK, inevitable discovery is going nowhere. What is your take on what the district court meant other than what the district court seems to have clearly said? I don't like the inevitable discovery doctrine and I don't intend to apply it here. I, Your Honor, I can't say for certain what Judge Boyle meant when he said that. I believe that regardless, he showed in his opinion in this case that he believes the inevitable doctrine, discovery doctrine is alive and well because he applied it and cited the relevant precedent. Well, now I'm looking at the district court's suppression order and I don't understand why there's a sentence in here. I agree the district court didn't just, in its written order, just refuse to apply the inevitable discovery doctrine. But I go through, the court is going through it. This is on JA 204. So the court says the court is not persuaded that the officer testimony, which largely focused on the thoroughness of the search, contained enough particularity. That, I agree, is a 100 percent relevant question under the inevitable discovery doctrine. But then immediately after it is the following sentence. Further, the government does not explain why the officers could not have seized and held the bags while waiting for the warrant to issue, complying with the strictures of the Fourth Amendment. That is in the center of the court's legal analysis. And it seems completely legally irrelevant. Do you agree that under the inevitable discovery doctrine, that remark is completely irrelevant? I agree that it's irrelevant under the inevitable discovery doctrine. I would submit that at that point the opinion stopped the court's opinion at the end of the sentence beforehand. And the judge has concluded his analysis under inevitable discovery. And at that point, he is simply noting. Well, the whole problem with that is the very next sentence, the court's opinion goes right back to talking about exceptions to the Fourth Amendment and exceptions to the exclusionary rule. I mean, it seems to me that it's lodged smack dab in the middle of the court's analysis of the inevitable discovery issue. Again, it's possible that the court was saying that, well, since inevitable discovery doesn't apply, the court has also not, or excuse me, the government has also not shown any other justification or exception to the warrant requirement here. And regardless, Your Honor, I believe it's dicta, and I believe it's not essential to the court's holding, and that this court could uphold the district court's ruling, notwithstanding that statement. Hey, can I ask you about your sort of this would gut Davis argument? Which, look, as a practical matter, has a lot of force, I get. The government's response, though, I'm not really sure you have a response to, like, you could say the exact same thing about applying inevitable discovery after Gantt, right? Like, Davis basically takes Gantt and extends it outside the Carr context. Now, and the government represents, and my research seems to indicate, I mean, everybody's applying inevitable discovery to Gantt violations, and you could, couldn't you make the exact same, this is going to render Gantt a dead letter? Because, like, if you can just get it around Gantt via inevitable discovery, then Gantt is not in the real world ever going to do anything. Your Honor, I would respond to that by noting the cases that were cited and the government's reply brief. I believe in each of those cases, I'll just take United States v. Rooks as an example. It's a Ninth Circuit case where they had testimony from an officer that, at the suppression hearing, about the fact that the vehicle would have inevitably been impounded and taken into custody. So there, there was an officer who testified. I'm not sure. No, this is, that's an argument about whether the testimony in a particular case is good enough to establish the factual predicate for inevitable discovery. That I get. But I understand a major thrust of your argument to be like, you can't allow inevitable discovery in this situation because if you do, a reasonably competent series of law enforcement officers can render every single Davis violation inevitable discovery. And, and like, that is a, that's a, I guess that's a conceptual point, not a point about the evidence in particular cases. And there is some intuitive force to that for me. But then it occurs to me, you could say the exact same thing about allowing inevitable discovery for Gantt violations. And yet it seems that we in every court of appeals to have considered the question have said you can have inevitable discovery for Gantt violations. Correct, your honor. You can have an inevitable discovery for Gantt violations, assuming that the requirements of inevitable discovery are met. Yes, but I'm saying one of the things I understand your brief to be fighting is the idea that you can ever have an inevitable discovery for a Davis violation because you have this thrust in your brief that said that would gut Davis. Again, I think you have two arguments. You have an argument for the facts of this case about whether inevitable discovery has been made on the facts of this case. But then you also seem to have this broader argument that there really shouldn't be any sort of thing as inevitable discovery for Davis violations. And that's the part of the argument I'm asking you about right now. Correct. And that's true, your honor. And we felt compelled to make that argument given the clear language of Davis. And I understand your argument about violations of, in respect to Gantt and inevitable discovery. It's a bare minimum, your honor. I would say that the Raleigh Police Department's incredibly broad, limitless policy of always, regardless of the circumstances whatsoever, without any showing of inevitability of the arrival of personal belongings in a detention center that the police officers have carte blanche to conduct inventory searches of personal belongings of individuals they arrest at the scene of crimes. I'd also like to address the argument that Ms. Noakes made. I'm sorry, can I address that, ask you about that point? Is it, are you making that argument because a search at the scene of the alleged arrest is not really an inventory search in the sense that we often think about it? Correct, your honor. I think it would be an impermissible ruse for searching. To quote Florida versus Wells. So under your world, an inventory search would only be proper at a jailhouse? Is that what this was? That is how it was described by the Supreme Court in Illinois versus Lafayette. That was, the justifications for the inventory search are so that weapons and contraband don't make it into the jailhouse. And so there's no reason for that search to take place before the, unless the weapons or contraband were going to arrive at the jailhouse. Right, go ahead, go ahead. I was going to say, I'm wondering, and maybe this is just intellectual curiosity, but we're talking about unreasonable searches and seizures and the Constitution bunches those together, search and seizure. And so we arrest somebody and seize them because we have a problem because they're committing a crime. But yet then we restrict ourselves from searching them because I don't know why. And Gantt, of course, is an opinion which basically says you can't search, even though you could seize. And I'm wondering whether the Supreme Court will ever review this or whether they tolerate the inventory search basically as a mitigating factor. Because when you arrest a person who has committed a crime or the probable cause to commit a crime, you seize them and search them. And I don't understand why we have a restriction on everything. The only exception I would make conceptually is the new phenomenon of a cell phone, which the Supreme Court has recognized as a different category altogether because it's such a broad container of information. But aside from that, I wouldn't be surprised if the Supreme Court took one of these cases and reviewed this all together, went right back to the Fourth Amendment and equated searches and seizures and linked them to probable cause and not to some other aspect. But that's just a curiosity. You don't need to answer it, but you're welcome to comment. I was going to say, Your Honor, that is far, far above my pay grade. Well, it's above mine, too. You know, I'm just a lowly court of appeals judge. So I mean, I would offer that, you know, in this case, we're talking about, you know, personal belongings, you know, closed containers that the government at the time of the arrest, that they don't have anything to do with the basis for which the defendant was arrested. And that would apply here. And that might be a more limiting factor, in other words. But here, this would be a perfect example. Here, they have a probable cause that this man committed a crime in their presence and they arrest him. And it seems to me whether they search him with the bags on his body or on the street next to his body would make zero difference. They are seizing and searching in connection with a probable cause of a crime being committed. And searching is just as productive as the seizure. The seizure has its purpose and so does the search. And it's not just safety, in my judgment. It's also evidence, further evidence of the crime. Gant doesn't say that, at least with respect to automobiles. But I derive that, though, in thinking back, what is reasonable and not reasonable under the Constitution. And that's the foundation on which we're building all this. And the inventory search has been allowed. And as you point out, it tends to mitigate the protections of Gant and all the others. Perhaps, in many cases, just making them hollow. But it seems to me that may be a deliberate decision of the Supreme Court in view of the fact that they have got somebody pursuant to probable cause. Now, of course, if there's a question about that, that's something else. But I'm assuming they have a good reason to arrest somebody. And they arrest him. They should be able to search him and everything about him. That could be relevant to the crime. That said, I withdraw all that, unless you want to have this law school debate. The only thing I'll say about that is the hollowing effect of the inevitable discovery doctrine and the inventory search, I mean, given that it has that effect, I think it's why it's important that it be narrowed to its justifications and articulated by the Supreme Court. Fair enough. And if I may, Chief Judge Giaz, just one really quickly about the written policy issue. Go ahead. So obviously, the government can meet its burden through either a written policy or testimony. We submit that it did not meet its burden here through the testimony. So then what it's left with is what it submits as its documentary evidence. And here, what they submitted is the Raleigh Police Department manual talking about all different kinds of searches and seizures that they undertake. And it has one small portion about that, which says that they conduct inventory searches pursuant to the Wake County Detention Center's policy. But it doesn't provide that policy itself. I think it's fair for the district court to say, well, if I don't think that the testimony about the policy was sufficient, it would certainly be helpful to have to see that written policy as well. And they didn't have that. All right. Thank you very much. Thank you. Ms. Noakes. I have to do a double take because the government usually doesn't get rebuttal. Yes, Your Honor. I want to address this point about the policy violating the Fourth Amendment. My colleague started his argument by saying he believes the Raleigh police policy violates the Fourth Amendment. And that's the first time that's been argued, is that that policy violates the Fourth Amendment. He also says that if it's not a ruse for sort of a general rummaging or searching for evidence, then why doesn't it give officers discretion to hand that property off to somebody else who may be at the scene or wherever? And in answer to that, I point the court to the Say case, S-E-A-Y, where this court said that these policies should limit discretion as much as possible. They can have some discretion, but they should limit that discretion as much as possible. And in that case, the court was looking at a policy that required inventory searches of all of an arrestee's property, even if the police were going to hand that property off to a family member or a friend. So that policy did give the discretion to hand the property off, but it required inventory before doing so. And this court did not have a problem with that policy. So to the extent that there's an argument here that this policy violates the Fourth Amendment, first of all, that was not submitted to the district court. And second of all, this policy is in line with this court's precedent on this issue. I want to address the argument that the bags might not have made it to the jail. I'll first note that the defendant didn't make this argument to the district court, and there's certainly no indication in the district court's order that it relied on this or even considered this. As a threshold matter, the defendant admitted before the district court that there was no one on the scene who could have taken the bags for him. So this is not a matter of the government eagle-eyed watching that body camera video that has been provided in the appendix volume two. This is a defendant's admission at JA 17 and 20, where he says that there were no bystanders who could have taken the property at the time of the arrest. So if the bags were going to be waylaid somewhere, it would have, I guess, had to have been at the hospital. But there simply was no evidence that that would have even been possible. In fact, the evidence is contrary. The Raleigh Police Department's policy allows for evidence to be secured by somebody that the person in control of the property designates. This is the second paragraph of the policy at JA 159. But only after the conclusion of the inventory search. So the evidence shows that these items of property would have been searched even if Raleigh Police would have then given them off to somebody at the hospital. The policy is clear. They're required to do this inventory search. And if they're going to hand the bags off, it has to be done before that. But there's nothing in the record that even hints that this property would have been treated differently. And the court dismissed this sort of speculative, well, things could have happened differently. Again, in that say case, where there the defendant said, well, if the police hadn't searched my bag, I might have told the police that actually it belonged to somebody else. And then they might not have done the search. And the court dismissed that speculation. That's just what we have here. Bare speculation that the bags might not have made it to the jail. When the policy shows that the evidence would have been searched before being handed off to somebody else. And the testimony by the jail lieutenant was that typically every arresting agency brings personal property of the restee to the detention center when the person is brought to jail. So the evidence before the district court supported a conclusion and only one conclusion, which was that the bags would have, in fact, made it to the detention center. Where again, they would have been subjected to searches. In conclusion, your honors, the court clearly erred in finding the government's evidence did not contain enough particularity to show inevitable discovery through at least one of the searches that would have been done. One of the lawful inventory searches by the Raleigh Police Department and the Wake County Detention Center. The evidence clearly showed that the police lawfully could have and would have uncovered the evidence. The simple fact is that the defendants' guns and drugs would not have made it into the jail without being found. Their discovery was inevitable. And so we're asking this court to reverse and remand the district court with instructions to deny the motion to suppress. All right. Thank you very much, Ms. Noakes. I want to thank both counsel for their very able arguments. Mr. Scheib, I want to thank you specifically for your willingness to be court appointed. In the matter, Mr. Allen was very well represented, as was the United States in this case. So thank you both for your arguments today. We'd normally come down and greet you, but we can't do so given the circumstances. But we very much appreciate your being with us today. Thank you, your honor. Thank you. And with that, I would ask the clerk to adjourn court. Sonny Dutt. Dishonorable court stands adjourned. Sonny Dutt, God save the United States and dishonorable court.
judges: Albert Diaz, Paul V. Niemeyer, Toby J. Heytens